IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MARGO E. WALKER,                    )      CIVIL NO. 06-00408 LEK
                                    )
          Plaintiff,                )
                                    )
     vs.                            )
                                    )
JOHN E. POTTER, IN HIS              )
CAPACITY AS POSTMASTER              )
GENERAL, UNITED STATES POSTAL )
SERVICE,                            )
                                    )
          Defendant.                )
_____ )


**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On October 28, 2008, Defendant John E. Potter, in his

capacity as Postmaster General, United States Postal Service

("Defendant"), filed the instant Motion for Summary Judgment

("Motion").  Plaintiff Margo E. Walker ("Plaintiff") filed her

memorandum in opposition on January 15, 2009 and Defendant filed

his reply on January 29, 2009.  This matter came on for hearing

on March 9, 2009.  Appearing on behalf of Defendant was Assistant

United States Attorney Harry Yee, and appearing on behalf of

Plaintiff was Clayton Ikei, Esq.  After careful consideration of

the Motion, supporting and opposing memoranda, and the arguments

of counsel, Defendant's Motion is HEREBY GRANTED IN PART AND

DENIED IN PART for the reasons set forth below.

**BACKGROUND**

Plaintiff filed the instant employment discrimination

action on July 28, 2006.  She alleges that she was not selected for the Honaunau Postmaster position ("Honaunau Position")[1] because of her race, gender, and disability, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1, *et seq.* ("Title VII"), and the Rehabilitation Act of 1973, as codified in 29 U.S.C. § 791-1, *et seq.* ("Rehabilitation Act").  She also alleges that she was not selected for the Hawi Postmaster position ("Hawi Position")[2] because of her race and disability, in violation of Title VII and the Rehabilitation Act. Plaintiff seeks declaratory and injunctive relief,[3] past and future wage loss, lost employment benefits, compensatory damages, attorney's fees, and costs.

## I.    **Factual Background**

Plaintiff began working for the United States Postal Service ("USPS") in 1987.  She worked as the postmaster in Shapleigh, Maine, and Sebago, Maine, for a total of eight years. [Complaint at ¶ 4.]  In 2002, Plaintiff relocated to Hawaii and a part-time, flexible clerk position at the Kailua-Kona Post

---

[1] The Honaunau Post Office is a level 15 post office. [Motion, Decl. of Don Takeuchi, Exh. A (Vacancy Announcement for Honaunau Position).]

[2] The Hawi Post Office is a level 13 post office.  [Motion, Decl. of Glen Ono, Exh. A (Vacancy Announcement for Hawi Position).]

[3] Plaintiff asks that she be placed in a postmaster position, equivalent in rank to the Honaunau Position. [Complaint at 7, ¶ 2.]

Office.  On October 30, 2002, Plaintiff injured her back at work and was diagnosed with a Lumbar Stenosis with disk injury, a permanent disability.  [Complaint at ¶¶ 9-10.]  Her injury requires the following permanent work restrictions: "not working more than eight hours a day, . . . a break from standing every two hours, not working more than six days a week, and no lifting over 25 pounds."  [Id. at ¶ 10.]  Plaintiff alleges that, as a result of the injury, her "major life activities of standing, walking and lifting have been permanently impaired."  [Id. at ¶ 11.]  After the injury, USPS provided her with reasonable accommodations for her permanent physical restrictions caused by her disability.  [Mem. in Supp. of Motion at 2.]

A.    **Honaunau Position**

On or about July 8, 2004, Plaintiff applied for a promotion to the Honaunau Position.[4]  There were five applicants for the Honaunau Position: Plaintiff, a female Caucasian; Ellen Poai, a female of Hawaiian-Japanese ancestry; Iwalani Rodrigues,[5] a female of Hawaiian-Chinese-Caucasian ancestry; Jody Miyose, a female of Japanese-Chinese ancestry; and Ardaven Ikeda, a male of Japanese ancestry.  On August 17, 2004, Don Takeuchi interviewed

---

[4] A copy of Plaintiff's application for the Honaunau Position is attached to the Yee Decl. as Exhibit E.

[5] Plaintiff now states that this applicant is Iwalani Enriques, who also applied for the Hawi Position.  [Mem. in Opp. at 4-5.]

Plaintiff for the Honaunau Position.  According to Plaintiff, Mr. Takeuchi suggested that she take a temporary Officer-in-Charge ("OIC") position so that she could prove that she was physically capable in light of her status as a limited duty employee.  On September 9, 2004, Mr. Takeuchi informed Plaintiff that she had not been selected.  Mr. Ikeda was selected for the Honaunau Position.  [Complaint at ¶¶ 13-16.]  According to Mr. Takeuchi, of the five applicants, Plaintiff and Mr. Ikeda were the most qualified.  Mr. Ikeda was a postmaster when he applied for the Honaunau Position and Plaintiff had prior postmaster experience.  [Motion, Decl. of Don Yukio Takeuchi ("Takeuchi Decl.") at ¶ 9.]

   B.   **Hawi Position**

        On or about July 7, 2004, Plaintiff applied for a promotion to the Hawi Position.[6]  [Complaint at ¶ 12.]  The Hawi Post Office is a one-person office.  [Ono Decl. at ¶ 5.]  There were four qualified applicants for the Hawi Position: Plaintiff, a female Caucasian; Karin Sullivan, a female Caucasian; Iwalani Enrigues,[7] a female of Hawaiian-Chinese-Caucasian ancestry; and Moira Rabang, a female of Asian ancestry.  On November 12, 2004,

---

        [6] A copy of Plaintiff's application for the Hawi Position is attached to the Motion as Exhibit D to the Declaration of Harry Yee ("Yee Decl.").

        [7] Plaintiff now refers to this applicant as "Iwalani Enriques".  [Mem. in Opp. at 4-5.]

Glen Ono interviewed Plaintiff for the position.  [Complaint at ¶¶ 17-18.]  During the interview, Plaintiff stated that "she could safely perform all the job requirements of a window/distribution clerk" and she "acknowledged that she had a lifting limitation of 25 to 35 pounds."  [Id. at ¶ 18.]  Mr. Ono concluded that Plaintiff was not being honest with him when she said this, and Plaintiff argues that his conclusion indicates that her disability played a part in the selection process.  On or about November 26, 2004, Plaintiff learned that she had not been selected.  Ms. Rabang was selected for the position.  [Id. at ¶¶ 17, 19-20.]

C.  **Administrative Proceedings**

On January 8, 2005, Plaintiff filed a formal administrative complaint regarding her non-selection for the Honaunau Position.  [Complaint at ¶ 21.]  The complaint alleged race, gender, and disability discrimination.  Plaintiff stated that "Don Takeuchi selected a less qualified person for the position for which [she] applied."  [Exh. A to Yee Decl. (EEO Complaint).]

On February 2, 2005, Plaintiff filed a formal administrative complaint regarding her non-selection for the Hawi Position.  [Complaint at ¶ 22.]  The complaint alleged race and disability discrimination.  She stated that "Glen Ono selected a less qualified person for the position for which [she] applied."

[Exh. B to Yee Decl. (EEO Complaint).]

On June 24, 2005, Plaintiff requested a hearing before an administrative judge of the Equal Employment Opportunity Commission ("EEOC"). On May 17, 2006, the administrative judge dismissed the administrative complaints without prejudice because Plaintiff informed him that the claims would be the basis of a civil action filed in federal court. [Complaint at ¶¶ 23-24.]

## II. **Defendant's Motion**

In the instant Motion, Defendant argues that he is entitled to summary judgment on all claims because Plaintiff cannot prove that her non-selection for either the Honaunau Position or the Hawi Position was based on race or disability discrimination, and she cannot prove that her non-selection for the Honaunau Position was based on gender discrimination. Further, Plaintiff cannot prove her allegations of disparate treatment because USPS had legitimate reasons for both non-selections. Finally, Plaintiff cannot prove that she was qualified to perform the essential functions of the positions, with or without a reasonable accommodation.

Defendant points out that Plaintiff has admitted that she does not believe either Mr. Takeuchi or Mr. Ono demonstrated any racial bias against her during her interviews. [Mem. in Supp. of Motion at 6 & n.8 (citing 12/4/07 Depo. of Margo E.

Walker Depo. ("Walker Depo.") at 13:22-25, 31:24-32:5).[8]

Further, she never heard them make any racially derogatory

remarks.  [Id. at 6-7 & n.9 (citing Walker Depo. 32:6-23).]

Defendant argues that Plaintiff's Complaint did not present any

factual allegations supporting her conclusory statements about

racial discrimination.  Defendant contends that Plaintiff's

subjective belief that she was discriminated against is not

sufficient to avoid summary judgment.  Her deposition testimony

shows that the only basis for her belief that she was

discriminated against is her belief that she was more qualified.

[Id. at 8 (citing Walker Depo. 64:11-16).]

Defendant also argues that Plaintiff cannot prove that

her non-selection for the Honaunau Position was the result of

gender discrimination.  Plaintiff admitted that Mr. Takeuchi did

not say anything during the interview which indicated that he had

a gender bias.  The basis of her gender discrimination complaint

is her subjective belief that she was more qualified than the

male who was hired.  [Id. at 8-9 (citing Walker Depo. 14:1-11).]

---

[8] Excerpts from the transcript of Plaintiff's deposition are
attached to the Yee Declaration as Exhibit F.  Page 31 of the
deposition is not included in the excerpts.  Page 32, which is
included, states that Mr. Ono did not say anything Plaintiff took
as racially derogatory, nor did he make any racial slurs.
Plaintiff's deposition is not attached to Plaintiff's Separate
and Concise Statement of Facts in Opposition to Defendant's
Motion for Summary Judgment ("Plaintiff's Concise Statement").
This Court will not consider Defendant's citations to portions of
depositions or other documents that are not included in the
record.

Mr. Takeuchi told her that she was "very well qualified." [Id. at 9-10 (citing Walker Depo. 58:15-19).[9]] Mr. Takeuchi states in his declaration that Mr. Ikeda and Plaintiff were more qualified than the other applicants for the Honaunau Position. He felt that Mr. Ikeda was the most qualified and selected Mr. Ikeda because Mr. Ikeda had current experience as a postmaster, while Plaintiff had not been a postmaster for more than two years. In addition, Mr. Ikeda had worked and been personally involved in the West Hawaii community, where the Honaunau Post Office is located, while Plaintiff did not list any community involvement in West Hawaii.[10] Mr. Takeuchi denies pre-selecting Mr. Ikeda for the position. [Takeuchi Decl. at ¶ 9.]

Defendant notes that Plaintiff's EEO claim regarding the Honaunau Position does not allege any supporting facts showing that she was more qualified that Mr. Ikeda. After she

---

[9] Page 58 is not included in Defendant's excerpts of the transcripts of Plaintiff's deposition. Plaintiff does state in her declaration that: "When [she] asked Mr. Takeuchi what his expectations of [her] were as to getting promoted, he looked at [her] and said, 'Well we certainly know you are very well qualified and you know your only competition for the position is a postmaster.'" [Plaintiff's Concise Statement, Decl. of Margo E. Walker ("Walker Decl.") at ¶ 38.]

[10] One of the requirements in the Vacancy Announcement for the Honaunau Position states: "RESIDENCY REQUIREMENTS: Postmasters are expected to identify with and be appropriately involved in the community they serve. If necessary, newly appointed Postmasters may be required to relocate to their new post office community to provide the required services and to ensure their community involvement." [Exh. A to Takeuchi Decl.]

was not selected, she assumed as true some rumors that Mr. Takeuchi and Mr. Ikeda knew each other during their childhood and played golf together.[11]  Defendant argues that, not only do these rumors fail to support her allegations of gender discrimination, but they are false.  [Mem. in Supp. of Motion at 12-13 & n.16 (citing Exh. K to Plaintiff's Concise Statement, 11/29/07 Depo. of Don Takeuchi ("Takeuchi Depo."), at 24:2-25:13).[12]] Mr. Takeuchi did not meet Mr. Ikeda until 2003, when he was visiting USPS offices on the Island of Hawaii.  [Takeuchi Depo. at 24:6-21.]  Mr. Takeuchi testified that his relationship with Mr. Ikeda was "strictly business".  [Id. at 25:11-13.]  In fact, Mr. Takeuchi grew up in Honolulu and does not golf.  [Takeuchi Decl. at ¶¶ 10-11.]  Defendant therefore argues that Plaintiff cannot meet her burden of proof on her race or gender discrimination claim.

Defendant also argues that Plaintiff cannot establish that her non-selection for either position was the result of

---

[11] Defendant cites a portion of Plaintiff's deposition where she acknowledges writing that the two men grew up on the same part of the Island of Hawaii and often played golf together. [Mem. in Supp. of Motion at 12-13 n.16 (citing Walker Depo. at 66:10-67:4).]  Defendant does not say where Plaintiff wrote this and Defendant did not include these pages of Plaintiff's deposition in the excerpts attached to the Motion.

[12] Excerpts from Mr. Takeuchi's November 29, 2007 deposition are attached to the Yee Decl. as Exhibit G.  The complete transcript of Mr. Takeuchi's deposition is attached to Plaintiff's Concise Statement as Exhibit K.

disability discrimination.  Plaintiff's disability discrimination claim regarding the Honaunau Position appears to be based on her claim that Mr. Takeuchi told her that she should take an OIC position to prove her ability to work in spite of her physical restrictions.  [Complaint at ¶ 15.]  Mr. Takeuchi testified in his deposition that he did not believe that this was a topic of discussion during the interview.  [Takeuchi Depo. at 27:1-13.] The suggestion of an OIC position came up after Mr. Takeuchi closed the interview.  As with the other applicants, after he closed the interview, Mr. Takeuchi discussed what Plaintiff saw in her future with USPS.  He asked her why she had not requested any OIC positions at the Kailua-Kona office.  He believed her response was that she did not want to be a supervisor, she wanted to be a postmaster.  Mr. Takeuchi, however, denied saying that it would be a way to prove herself as a limited duty employee.  He denied making any reference to her limited duty status and said that her ability to handle the physical demands of the position was not an issue.  [Id. at 28:14-30:20.]

Finally, Defendant argues that the physical limitations listed in the Complaint prevent Plaintiff from performing essential functions of either the Hawi Position or the Honaunau Position.  In particular, Plaintiff cannot lift over twenty-five pounds.  [Complaint at ¶ 10.]  Defendant notes that both positions require lifting, carrying, pushing, and pulling up to

10

seventy pounds.[13]  Defendant argues that, although the

Rehabilitation Act requires that government agencies provide

reasonable accommodations for an employee's disability, the

agencies are not required to eliminate essential functions of a

position or to reallocate them to other employees.

Defendant argues that, according to the report of his

expert witness, Vocational Management Consultants, Inc. ("VM

Consultants"), Plaintiff's permanent physical restrictions

---

[13] Defendant cites no supporting evidence for this
requirement.  Neither the Vacancy Announcement for the Honaunau
Position nor the Vacancy Announcement for the Hawi Position refer
to this requirement.  Mr. Ono testified during his deposition
that it was a requirement for postmasters in small post offices
to be able to lift seventy pounds, although he acknowledged that
he did not know whether it was a written requirement.  [Exh. Q to
Plaintiff's Concise Statement, 11/30/07 Depo. of Glen Ono ("Ono
Depo.") at 31:19-31:8.]  Mr. Takeuchi's and Mr. Ono's interview
questions are attached to each of their declarations.  Mr.
Takeuchi's questions do not refer to the lifting requirement.
Mr. Ono's questions include:

> Hawi is staffed with one person, the Postmaster.
> The daily operation requires heavy lifting and
> carrying up to 70 pounds, standing for long
> periods of time of up to 8 hours or more while
> servicing customers at you [sic] window, and
> distributing mail.  Would you be able to safely
> perform these tasks?  *If not, what would it take
> for you to accomplish these tasks?*

[Exh. B to Ono Decl. at 1 (emphasis in original).]
Mr. Ono stated in his declaration that Plaintiff told him
that she could safely lift up to seventy pounds despite her
lifting conditions because she could "work around it", but he
"did not believe she could safely perform the physical
requirements of the Hawi postmaster position because the Hawi
Post Office is only staffed by only the postmaster.  Without full
time assistance to lift more than 25 pounds, [he] did not believe
[Plaintiff] could do this job."  [Ono Decl. at ¶ 5.]  Mr.
Takeuchi's declaration did not address the lifting requirement.

prevent her from performing the essential functions of either the Honaunau Position or the Hawi Position. [Exh. C to Yee Decl. (VM Consultants December 10, 2007 report).] VM Consultants opine that both positions require moderate to heavy work, whereas Plaintiff's physician restricted her to light work. Defendant argues that the report's chart comparing the essential functions of both positions to Plaintiff's physical limitations proves that, if Plaintiff were in one of those positions, the following essential functions would need to be eliminated: lifting, carrying, pushing, and pulling up to seventy pounds; frequent to continuous bending; occasional stooping; frequent twisting; continuous standing; and frequent walking. Defendant argues that there is no contradictory expert testimony. Defendant therefore argues that Plaintiff was not qualified for either position and this was a legitimate, nondiscriminatory reason why she was not selected for either position. The burden therefore shifts to Plaintiff to rebut the valid, non-discriminatory reason for her non-selections and Plaintiff cannot do so.

## III. **Plaintiff's Opposition**

Plaintiff states that she actively sought advancement within USPS. [Walker Decl. at ¶ 7.] She emphasizes the following assignments that she had while working for USPS in Maine:

> 1.   Superintendent Postal Operations, Yarmouth, Maine, October 1990 to January 1991;

12

2.   Officer in Charge, Post Office, Nobleboro, Maine, January 1991 to April 1991.  The post office in Nobleboro, Maine, is a level 13 post office;
3.   Supervisor, Postal Operations, intermittent, Yarmouth, Maine.  The post office in Yarmouth is a level 16 post office;
4.   Address Management Specialist, Post Office, Portland, Maine.  The post office in Portland is a level 15 post office;
5.   Officer in Charge, Post Office, Raymond, Maine, November 1995 to February 1996.  The post office in Raymond is a level 18 post office;
6.   Customer Service Supervisor, Portland, Maine, from July 1996 to September 1996;
7.   Officer in Charge, Post Office, Raymond, Maine, from December 1998 to March 1999;
8.   Postmaster, Shapleigh, Maine, from September 1994 to June 2000.  The post office in Shapleigh is a level 15 post office;
9.   Postmaster, Sebago, Maine, form June 2000 to March 2002.  The post office in Sebago is a level 15 post office.

[Mem. in Opp. at 1-2 (citing Walker Decl. at ¶ 8, Exhs. D, E, J to Plaintiff's Concise Statement).]  She also emphasizes that she was on a number of postal committees in Maine, including a team that adjusted rural routes in its district.  [Id. at 2-3 (citing Walker Decl. at ¶ 61).]

In early 2002, Plaintiff and her husband sold their home and moved to Kailua-Kona.  Plaintiff took a part-time, flexible clerk position at the Kailua-Kona Post Office.  In July 2002, Plaintiff applied for an OIC position in Kailua-Kona, but was not selected.  She reapplied in February 2004, but was not selected.  In March 2004, she applied for a postmaster position in Kealakekua, but was not selected.  Mr. Takeuchi was the

selecting official.  [Exh. B to Plaintiff's Concise Statement.]

During Plaintiff's interview for the Honaunau Position, Mr. Takeuchi said that she was qualified and her only competition was a postmaster.  She understood this to refer to Mr. Ikeda and she took the statement to mean that she "needed to perform in an Officer in Charge (OIC) position to prove to Takeuchi that despite her disability, she could handle the physical aspects of the postmaster position."  [Mem. in Opp. at 4 (citing Walker Decl. at ¶¶ 27, 29, 31-37).]  Mr. Ikeda began working with USPS in August 1993 as a Window Distribution Clerk.  He was the OIC at a level 13 post office from July 1996 to September 1998, and became the Postmaster at Hawi in September 2001, where he worked until he was promoted to the Honaunau Position.  [Id. (citing Walker Decl. at ¶ 49; Plaintiff's Concise Statement, Exh. E, Exh. J at 13).]

Plaintiff argues that, during her interview for the Hawi Position, she "was asked questions which were directly related to her disability[.]"  [Id. at 5.]  Specifically, Mr. Ono asked her whether she could safely perform certain aspects of the daily operation of the Hawi Post Office: lifting and carrying up to seventy pounds; and standing for up to eight hours a day.  She responded that she could and that she handled a more intense workload at her current position.  She acknowledged that she had been injured at work and had physician-imposed work restrictions.

14

[<u>Id.</u> (citing Walker Decl. at ¶¶ 53-54).]  Mr. Ono asked how she
would handle a customer who brought a seventy-pound package to
her window.  She responded that she would use equipment to help
in that situation, or she would ask the customer to assist her.
She stated that she was fully aware of the physical requirements
of a postmaster position, and she believed a postmaster position
would be less physically demanding than her current job.  [<u>Id.</u> at
5-6 (citing Walker Decl. at ¶ 55).]  Plaintiff emphasizes that
Mr. Ono admitted that her inability to carry items outside of her
physical limitations played a part in the selection process.
Although Mr. Ono acknowledged that she told him she would be able
to lift or carry seventy to eighty pounds in spite of her
restrictions, he concluded that she could not safely do so by
herself.  [<u>Id.</u> at 6 (citing Exhs. O & P to Plaintiff's Concise
Statement).]  Mr. Ono did not do an individualized assessment of
Plaintiff's ability to perform the job, nor did he offer
reasonable accommodation.  Mr. Ono did not believe that she was
disabled.  [<u>Id.</u> (citing Ono Depo. at 39:15-40:19).]

        The selectee, Ms. Rabang, had been employed with USPS
since 1984.  She was a Window Clerk at the Kailua-Kona Post
Office from April 1984 to 1986 and at the Kamuela Post Office
from 1986 to 1999.  Her prior assignments included brief OIC
positions at a level 18 post office and a level 15 post office,
and she had never been a postmaster.  [<u>Id.</u> at 6-7 (citing

15

Plaintiff's Concise Statement, Exh. N, Exh. R at 9; Walker Decl. at ¶ 58.).]

Plaintiff states that, on November 20, 2007, Beverly Tokumine, a Vocational/Rehabilitation Specialist, interviewed her.  Ms. Tokumine did a job analysis with Mr. Ikeda at the Honaunau Post Office and with Ms. Rabang at the Hawi Post Office. Ms. Tokumine opined that Plaintiff was not likely to handle the physical demands of a one-person post office.  [_Id._ at 7.]

Plaintiff argues that her qualifications exceeded those of Mr. Ikeda, an Asian male with no disability, and Ms. Rabang, an Asian female with no disability.  She argues that race and gender played a part in Mr. Ikeda's pre-selection for the Honaunau Position.  Further, Mr. Takeuchi's comments that she needed to prove herself because of her limited duty status indicates that her disability played a part in her non-selection. Plaintiff argues that Mr. Ono's use of "racial slang in reference to Caucasians" indicated that race played a part in his decision and that his statement that Plaintiff's lifting and carrying restrictions played a part in his decision indicates that he improperly considered her disability.  [_Id._ at 8.]

Plaintiff emphasizes that neither vacancy announcement referred to the lifting/carrying requirement.  Further, each stated that "THE UNITED STATES POSTAL SERVICE PROVIDES REASONABLE ACCOMMODATION TO QUALIFIED INDIVIDUALS WITH DISABILITIES."  [_Id._

16

(emphasis in original).]  Plaintiff argues that she was qualified for both positions and she was not given an individual assessment as to whether she could perform the job, nor was she offered reasonable accommodation.

Plaintiff argues that courts can infer unlawful discrimination if a plaintiff is not selected in spite of her superior qualifications.  She argues that, in order to survive summary judgment, she need only present evidence from which a rational fact finder could infer the that the articulated reason for the employment action was a pretext.  Plaintiff argues that she was more qualified than the selectees for either position. She also claims that Mr. Takeuchi made statements to three female applicants for the Honaunau Position (Ms. Poai, Ms. Enriques, and Plaintiff) which indicated that "he had a preconceived idea of who was eligible and likely to be promoted and why these women would not be competitive."  Plaintiff argues that his comments to her indicated that "he did not seriously consider the other female applicants."  [Id. at 16.]

Mr. Takeuchi also told Robert Rapoza, Honokaa Postmaster, that the person selected for the Honaunau Position had to be a postmaster.  Plaintiff asserts that his statement indicated that Mr. Takeuchi had pre-selected Mr. Ikeda.  She also claims that certain procedures were undertaken after Mr. Ikeda's selection in order to avoid review by the district manager.

17

Mr. Rapoza, who is acquainted with both Plaintiff and Mr. Ikeda, further testified that he believed Plaintiff was the better qualified candidate.  [Id. at 17 (citing Exh. U to Plaintiff's Concise Statement, 3/7/08 Depo. of Robert Rapoza ("Rapoza Depo."), at 13:20-16:22; 21:14-22:5).]

Defendant does not appear to contest the fact that she is disabled under the Rehabilitation Act.  Defendant's contention is that she is unable to perform essential functions of both positions.  Plaintiff argues that Ms. Tokumine's Vocational Rehabilitation Report is deficient because she made it after Plaintiff's non-selection.

Plaintiff argues that the selecting officials should have conducted an individual assessment to determine whether she could perform the functions of the positions and that they could not rely solely on a pre-employment examination to determine her physical capabilities.  Plaintiff acknowledges that job requirements which screen out otherwise qualified disabled applicants are sometimes necessary to avoid future injury.  Plaintiff, however, argues that there must be a reasonable probability of substantial harm, and such a determination requires the employer to gather substantial information.  She also emphasizes that an employer's good faith or rational belief regarding the applicant's abilities is not a sufficient defense to a discrimination claim.  The Court must determine whether, in

18

light of Plaintiff's work and medical history, her employment would pose a reasonable probability of substantial harm.

Plaintiff also emphasizes that, in determining whether an employer was justified in its employment decision, the court can only consider the evidence relied upon by the employer at the time it made the decision.  Both Mr. Takeuchi and Mr. Ono claim that they did not know Plaintiff was disabled.  They did not perform an individualized assessment and they did not discuss reasonable accommodation.  Plaintiff argues that Mr. Takeuchi and Mr. Ono were aware of her disability, as evidenced by the fact that they each raised the issue during her interview.

Plaintiff argues that the burden to prove inability to accommodate is on Defendant.  If Defendant can adduce credible evidence that accommodation is not reasonably possible, the burden shifts to her to demonstrate her capabilities and possible accommodations.  She also argues that whether a physical requirement is essential to the position is a legal inquiry and the employer's opinion about whether it is essential may differ from the court's opinion after the court conducts a reasonable inquiry.  She also argues that whether an accommodation is reasonable is a highly-fact specific inquiry.  Further, a qualified disabled individual does not waive her right to modification of job duties simply because she is apprised of the duties before she is hired.

Plaintiff argues that she was provided with reasonable accommodation for her Distribution Clerk position and was able to perform her job well, but neither Mr. Takeuchi nor Mr. Ono offered her accommodation. [Id. at 38 (citing Walker Decl. at ¶¶ 14, 40-48, 56-58; Plaintiff's Concise Statement, Exh. U at 18:9-25, Exhs. X & Y).]

She states that her condition gets worse if she does not follow the restrictions imposed by her doctor. She has increased back pain if she sits or stands for too long and she has difficulty getting up if she has to squat or kneel for any length of time. If she walks for more than half-an-hour at a time, she must rest and take pain medication in order to make it through the day, and sometimes it causes her to have increased pain or back spasms. [Walker Decl. at ¶ 13.] She is assigned work that she can accomplish within her restriction to a forty-hour work week. Her Retail Employee Observation by her supervisor shows that she does a "Good job with customers and other employees. Very efficient." [Id. at ¶ 14 (citing Exhs. X & Y to Plaintiff's Concise Statement).] She states that, when Mr. Takeuchi interviewed her for the Honaunau Position, she was working forty hours a week and had duties similar to those of a postmaster. [Id. at ¶ 35.]

Plaintiff states that, at the end of her post-injury Rehabilitation, she performed a work hardening test to determine

if she was able to perform her work duties.  It indicated that the work required for her job was not suitable for her physical condition.  Plaintiff, however, chose to stay with USPS because she "was able to work at [her] bid position as a window clerk with limited assistance." [Id. at ¶ 24.]  She states that one of the reasons she applied for the Honaunau Position was that she wanted "a less strenuous physical job." [Id. at ¶ 26.]  At the time, she was working in a craft position, but she knew what the postmaster job entailed because of her postmaster experience in Maine. [Id. at ¶ 31.]  After they discussed the physical aspects of the position, Plaintiff asked Mr. Takeuchi if USPS would not be able to accommodate her disability.  He did not give a clear response, but stated that USPS's policy was to accommodate disabilities. [Id. at ¶ 37.]

During Plaintiff's interview for the Hawi Position, Mr. Ono asked her how she would handle a customer who came in with a seventy-pound package.  In her memorandum in opposition to the instant Motion, Plaintiff states that she had been through the interview process for postmaster positions many times before and had never been asked that kind of question.  She complains that it "had absolutely nothing to do with [her] managerial abilities and was directed at [her] disability." [Id. at ¶ 54.]

The selectee for the Hawi Position, Ms. Rabang, had been with USPS for twenty years.  Prior to her selection, she was

21

a PS5 clerk, "a position which is primarily to support sales of products and services to customers." She had occasionally served as an acting supervisor in her level 20 office. [Id. at ¶ 57.] When Mr. Ono informed Plaintiff of her non-selection, he cited Ms. Rabang's years of service and the fact that Ms. Rabang lived in the community as advantages.[14] [Id. at ¶ 66.] Plaintiff, however, notes that Ms. Rabang applied for the position of Hawi Postmaster in 2001, when Mr. Ikeda was selected. He had less years of experience than Ms. Rabang and had to commute a total of 140 miles daily to Hawi. Plaintiff argues that this "nullifies those arguments of [Ms. Rabang's] advantage over [her]." [Id. at ¶ 67.]

During his deposition, Mr. Ono testified that clerks with medical restrictions would not be assigned any work that involved lifting items beyond their weight restrictions. He stated that clerks with temporary limited duty would not be assigned their regular duty. They would assist or instruct others and their work might be given to another clerk. [Id. at ¶¶ 69-71.] Plaintiff argues that Mr. Ono's testimony shows that he believes disabled clerks cannot perform their assigned duties and that he does not consider accommodation. She emphasizes that Mr. Ono stated that Plaintiff met all the basic requirements and

---

[14] The Vacancy Announcement for the Hawi Position includes the same residency requirement included in the Vacancy Announcement for the Honaunau Position. [Exh. A to Ono Decl.]

22

he never said that Ms. Rabang was selected because she was the most qualified applicant. [Id. at ¶ 73.]

Plaintiff states that she worked many years "in the position as a postmaster working alone in an office and did not expect to have any problems that [she] could not find a solution for." [Id. at ¶ 77.]  Mr. Ono stated that the work at the Hawi Post Office sometimes required the previous postmaster to work more than eight hours a day and he asked how she would complete the work within budget.  She responded that she could do the work within eight hours or she could justify why she needed help to do so.  Plaintiff also states that, according to USPS reports, at approximately the time of her application for the Hawi Position, there was a second person working with the Hawi Postmaster most days and, as the manager overseeing that office, Mr. Ono should have known this.  [Id. at ¶¶ 82-85.]

Ms. Rabang testified during her deposition that the Hawi Post Office gets packages weighing over fifty pounds about twice a month, and about once a month there is a customer mailing twenty boxes or more.  About four to five times a week there are customers mailing more than twenty-five pounds.  She also states that she does not have room to use a hand truck in the office. [Id. at ¶ 87 (citing Exh. V to Plaintiff's Concise Statement, 12/5/07 Depo. of Moira Rabang, at 30:11-16).]  According to Plaintiff, the office is very unorganized and overcrowded.  She

23

asserts that she would be able to clean it up so that she could use the equipment necessary to accommodate her disability.[15]  For example, she would have customers with heavy boxes bring them in through the side door and place them on the hand truck.  She would be able to transfer the box from the hand truck to the mail scale.  [Id. at ¶ 88.]  She argues that "there could be a small slide board built off from the counter to use to bring parcels from counter level to a rolling table.  That table could be used to move articles to the dispatch area."  [Id. at ¶ 89.]  While she believes it is unlikely that twenty large parcels would come in and there not be enough space for a hand truck, if that did happen, she would direct the customer to take the packages to the larger Kapaau Post Office a mile away.  [Id. at ¶ 90.]  She argues that her work at the Kailua-Kona Post Office is more physically strenuous and she therefore would be able to handle the Hawi Position.  [Id. at ¶¶ 92-93.]

Plaintiff also argues that USPS reports show that the statistics given to Defendant's expert witness regarding the volume of mail in the Hawi and Honaunau Post Offices were significantly overstated.  [Id. at ¶¶ 98-99.]  Mr. Ikeda told the vocational assessment investigator that his office is responsible for 500 outside post office boxes between Naalehu and Honaunau.

---

[15] Pictures of such equipment are attached to Plaintiff's Concise Statement as Exhibit T.

24

Plaintiff states that this was not in effect when she applied for the position, and it is only a managerial task.  He also stated that his clerk covered other offices during the busy season, which indicates that the clerk is not necessary during those times at Honaunau.  Plaintiff also argues that the customer volume and revenue she currently handles exceeds what Mr. Ikeda handles in Honaunau.  [Id. at ¶ 101.]  Finally, Plaintiff states that the drive time to either office is within her sitting limitations.  [Id. at ¶ 102.]

IV. **Defendant's Reply**

     In his reply, Defendant reiterates that Plaintiff has only her opinions and conclusions to support her race and gender discrimination claims.  In fact, she does not discuss any material facts regarding her race discrimination claim for the Hawi Position.  Defendant also argues that Plaintiff improperly relies on biased speculation from Mr. Rapoza, who represented her in both administrative EEO claims.  Further, he admitted in his deposition that he had no role in either selection process. [Rapoza Depo. at 24:11-18.]  In fact, he has never participated in a postmaster selection process.  [Id. at 37:3-20.]  Rapoza testified that he could not say whether he believed Plaintiff was or was not discriminated against on the basis of her race.  [Id. at 38:9-10, 44:7-10.]  He also did not think it was improper for Mr. Ono to ask Plaintiff during her interview for the Hawi

Position whether she could lift seventy pounds.  [Id. at 46:12-17.]  Defendant argues that Plaintiff's selective use of Mr. Rapoza's opinions cannot defeat summary judgment.

Defendant argues that the VM Consultants report does not go to the ultimate issue for the trier of fact, whether Plaintiff was discriminated against.  It goes to her physical ability to perform the duties of the positions.  The fact that it was done after her non-selection does not invalidate its opinion that she is not capable of performing the duties of these positions because of her physical limitations.

Finally, Defendant argues that Plaintiff did not ask for reasonable accommodation for either position.  In fact, she attempted to hide her physical limitations, even though the applications asked about safety and health.  She did not disclose her limitations until Mr. Ono asked her the standard question about being able to lift seventy pounds.  Further, any request for reasonable accommodation would not have been feasible for the Hawi Post Office, which has no other employees besides the postmaster.  Defendant also argues that her disability could not have influenced her non-selection for the Honaunau Position because Mr. Takeuchi did not ask her about physical limitations in the interview.

## STANDARD

Summary judgment is appropriate when "the pleadings,

the discovery and disclosure materials on file, and any
affidavits show that there is no genuine issue as to any material
fact and that the movant is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56©.  The moving party bears the initial
burden of establishing that there is no genuine issue of material
fact.  See MetroPCS, Inc. v. City & County of San Francisco, 400
F.3d 715, 720 (9th Cir. 2005).  There is no genuine issue of
material fact if, based on the record as a whole, a rational
trier of fact could not find for the non-moving party.  See
Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 587 (1986).  "A material fact is one that may affect the
decision, so that the finding of that fact is relevant and
necessary to the proceedings." W. Sunview Props., LLC v.
Federman, 338 F. Supp. 2d 1106, 1114 (D. Haw. 2004) (citing
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

        If the moving party meets its burden, the non-moving
party must then present evidence that there is a genuine issue of
material fact for trial.  In considering a motion for summary
judgment, a court must resolve all disputed issues of fact in
favor of the non-moving party.  See MetroPCS, 400 F.3d at 720.
"[T]he court must draw all reasonable inferences in favor of the
nonmoving party, and it may not make credibility determinations
or weigh the evidence." Reeves v. Sanderson Plumbing Prods.,
Inc., 530 U.S. 133, 150 (2000) (citations omitted).  Further,

27

"[i]n ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law."  W. Sunview, 338 F. Supp. 2d at 1114 (citation omitted).

## DISCUSSION

## I.   Title VII Claims

Plaintiff's Title VII race and sex discrimination claims are subject to the three-step burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Davis v. Team Elec. Co., 520 F.3d 1080, 1088-89 (9th Cir. 2008).

> The employee must first establish a prima facie case of discrimination.  If he does, the employer must articulate a legitimate, nondiscriminatory reason for the challenged action.  Finally, if the employer satisfies this burden, the employee must show that the "reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123-24 (9th Cir.2000) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

Id. at 1089.

## A.   Prima Facie Case

In order to establish a prima facie case, Plaintiff must show that:

> (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class

28

> were treated more favorably.  The requisite degree
> of proof necessary to establish a *prima facie* case
> for Title VII . . . claims on summary judgment is
> minimal and does not even need to rise to the
> level of a preponderance of the evidence.

Id. (citations and quotation marks omitted) (alteration in original).  Plaintiff, a Caucasian female, alleges that she was not hired for the Honaunau Position because of her race and gender and that she was not hired for the Hawi Position because of her race.  Thus, the first and third requirements are met.  See 42 U.S.C. § 2000e-2(a)(1) (stating that is an unlawful employment practice to fail or refuse to hire any individual because of, *inter alia*, the individual's race or sex).  Defendant does not dispute that Plaintiff was qualified for both positions.  Ardaven Ikeda, a male of Japanese ancestry, was hired for the Honaunau Position, and Moira Rabang, a female of Asian ancestry, was hired for the Hawi position.  Thus, Plaintiff contends that persons outside of her protected class were hired for the two positions.  This Court finds that, for the purposes of the instant Motion, Plaintiff established a prima facie case of race and gender discrimination.

    **B.**   **Legitimate, Nondiscriminatory Reason**

       The burden then shifts to Defendant to identify a legitimate, nondiscriminatory reason for Plaintiff's non-selection.

    **1.**   **Honaunau Position**

Don Takeuchi, the selecting official for the Honaunau Position, has testified that he selected Mr. Ikeda for the position because Mr. Ikeda was the most qualified applicant. [Takeuchi Depo. at 32:25-33:1; Takeuchi Decl. at ¶ 9.] Mr. Takeuchi testified that all of the applicants, except for Ms. Miyose, were qualified for the position. [Takeuchi Depo. at 32:22-23.] Plaintiff and Mr. Ikeda, who both had experience as postmasters, were more qualified than the others. At the time they applied for the Honaunau Position, Mr. Ikeda had current experience as a postmaster, whereas Plaintiff had not been a postmaster for more than two years. [Takeuchi Decl. at ¶ 9.] Mr. Takeuchi also cited the fact that Mr. Ikeda had personal and professional involvement in the West Hawaii community. In contrast, Plaintiff did not have any involvement in the West Hawaii community. Her application only listed community involvement in Maine. [Id.; Exh. D to Plaintiff's Concise Statement (Plaintiff's application for Honaunau Position); Exh. E to Plaintiff's Concise Statement (Mr. Ikeda's application for Honaunau Position).] Mr. Takeuchi testified that he used the applications to determine if the applicants met the required qualifications for the position. He used the interview process to make clarifications to the applications and to determine who was the best qualified. [Takeuchi Depo. at 59:2-13.] When asked how he rated Mr. Ikeda more qualified than Plaintiff,

30

Mr. Takeuchi stated that he determined Mr. Ikeda to be the best qualified based on the interview.  In particular, Mr. Takeuchi noted Mr. Ikeda's involvement in the community, his knowledge of the postal system, and his answers to the interview questions. [Id. at 58:6-23.]

Mr. Takeuchi did not select Plaintiff because she was not the best qualified.  [Id. at 21:3-12.]  He did not consider Plaintiff's race or gender when he selected Mr. Ikeda.  [Takeuchi Decl. at ¶ 9.]  This Court finds that Defendant has identified a legitimate, non-discriminatory reason for Plaintiff's non-selection for the Honaunau Position.

## 2.   **Hawi Position**

Glen Ono, the selecting official for the Hawi Position, has testified that he did not select Plaintiff for the position because he felt that Ms. Rabang was the most qualified applicant. [Ono Depo. at 59:9-13; Ono Decl. at ¶ 6.]  Mr. Ono considered Ms. Rabang to be more qualified than Plaintiff because of Ms. Rabang's length of service and her involvement in the Hawi community.  [Ono Depo. at 46:6-11.]  At the time they applied for the Hawi Position, Plaintiff had sixteen years of service, and Ms. Rabang had twenty years.  [Exh. M to Plaintiff's Concise Statement (Plaintiff's application for Hawi Position); Exh. N to Plaintiff's Concise Statement (Ms. Rabang's application for Hawi Position).]  Ms. Rabang already lived in the Hawi area and had

31

been involved with the schools there for some time.  [Ono Depo.
at 46:13-19, 56:2-6.]  Plaintiff apparently lived closer to
Kailua-Kona, which is some distance away from Hawi, but she told
Mr. Ono that she would relocate to Hawi if she became the
postmaster.  [Id. at 47:4-10.]

        In addition, because of Plaintiff's restriction to
lifting no more than twenty-five pounds, Mr. Ono believed that
she could not perform the job without full time assistance to
lift items beyond that weight.  [Ono Decl. at ¶ 5.]  The Hawi
Post Office is only staffed by the postmaster during the normal
course of the day, and USPS allows customers to mail items
weighing up to seventy pounds.  Mr. Ono therefore believed that
Plaintiff could not safely perform the duties of the Hawi
Position.  [Ono Depo. at 37:10-21.]  During her interview,
Mr. Ono asked Plaintiff if she could safely perform the tasks of
the position, including carrying up to seventy pounds, standing
for up to eight hours, and distributing mail.  She responded that
she would have no problem doing so.  In response to follow up
questions, Plaintiff stated that she suffered a back injury on
the job and had a permanent restriction of lifting no more than
twenty-five pounds.  Mr. Ono asked her how she would be able to
safely carry up to seventy pounds in light of her lifting
restrictions, and she responded that she knew how to work around
her restrictions.  Mr. Ono felt that Plaintiff may have been

32

trying to conceal her lifting restrictions and that she had not been completely honest with him when she said she could safely perform the duties of the Hawi Position.  [Ono. Decl. at ¶ 5; Ono Depo. at 38:2-23.]  Mr. Ono testified that Plaintiff's medical restrictions payed a "small" part in his selection for the Hawi Position; they were not "the determining factor."  [Ono Depo. at 58:9-16.]

Mr. Ono did not consider Plaintiff's race in his selection for the Hawi Position.  [Ono Decl. at ¶ 6.]  This Court finds that Defendant has identified a legitimate, non-discriminatory reason for Plaintiff's non-selection for the Hawi Position.[16]

C.    **Pretext**

Plaintiff bears the burden of establishing that Defendant's non-discriminatory reasons for her non-selection are pretextual.  The Court notes that this is not an onerous burden.

> Summary judgment is not appropriate if a reasonable jury viewing the summary judgment record could find by a preponderance of the evidence that the plaintiff is entitled to a verdict in his favor.  A plaintiff alleging employment discrimination need produce very little evidence in order to overcome an employer's motion for summary judgment.  This is because the ultimate question is one that can only be resolved through a searching inquiry-one that is most

---

[16] In other words, Defendant articulated a legitimate reason that is unrelated to Plaintiff's race.  Whether the consideration of Plaintiff's disability was discriminatory will be addressed in connection with her Rehabilitation Act claim.

> appropriately conducted by a factfinder, upon a
> full record.  In evaluating motions for summary
> judgment in the context of employment
> discrimination, we have emphasized the importance
> of zealously guarding an employee's right to a
> full trial, since discrimination claims are
> frequently difficult to prove without a full
> airing of the evidence and an opportunity to
> evaluate the credibility of the witnesses.

Davis, 520 F.3d at 1089 (citations and quotation marks omitted).

Thus, to survive summary judgment, Plaintiff need only prove that

a reasonable jury could find by a preponderance of the evidence

that Defendant's proffered reasons were merely pretext.

### 1.   **Honaunau Position**

Plaintiff argues that the following evidence

establishes pretext: she was more qualified than Mr. Ikeda; Mr.

Takeuchi made statements to herself and other female applicants

for the Honaunau Position which indicated that he did not

seriously consider the female applicants; Mr. Takeuchi made

statements to Robert Rapoza which indicated that he pre-selected

Mr. Ikeda; and Mr. Rapoza believed that the procedures undertaken

after Mr. Ikeda's selection were irregular.[17]  Plaintiff argues

that these facts warrant an inference of unlawful discrimination

pursuant to Mohammed v. Callaway, 698 F.2d 395 (10th Cir. 1983).

---

[17] In the Motion, Defendant quotes part of Plaintiff's
deposition in which she testified that she had been told by other
USPS employees that Mr. Ikeda and Mr. Takeuchi grew up in the
same part of Hawaii and often play golf together.  This portion
of Plaintiff's deposition is not in the record.  Further,
Plaintiff has apparently abandoned this allegation in light of
Mr. Takeuchi's deposition testimony disproving the allegations.

Plaintiff relies on the following portion of the

<u>Mohammed</u> opinion:

> The required qualifications and experience
> set out in the job opportunity announcement
> included a bachelor's or higher degree in
> engineering, three years of professional
> experience in engineering, and supervisory
> experience.  Dyer testified that he did not have
> an engineering degree.  When asked at trial why he
> applied for the position when he lacked an
> engineering degree, Dyer replied, "It was an
> opportunity to see if I could get ahead." . . . .
>      . . . .
> In sum, the record as a whole does not
> support the district court's finding that both
> candidates were *amply* qualified.  More
> importantly, when an employer rejects a minority
> candidate in choosing between competing
> individuals, the critical determination is whether
> they are *equally* qualified.  <u>Burdine</u>, 450 U.S. at
> 259, 101 S.Ct. at 1096.  This record does not
> permit a finding that Dyer's qualifications were
> equal to those of Mohammed.
>      . . . .
> An employer "has discretion to choose among
> *equally qualified* candidates, provided the
> decision is not based upon unlawful criteria."
> <u>Burdine</u>, 450 U.S. at 259, 101 S.Ct. at 1097
> (emphasis added).  Here the candidates were not
> equally qualified, and Mohammed offered undisputed
> evidence supporting an inference of pretext,
> including reliance in part upon subjective
> evaluations, serious procedural irregularities,
> cancellation of the first job announcement after
> he had applied, statistical evidence of the
> complete lack of minority supervisors, and
> affirmative action programs adopted but not
> implemented.  Based on our review of the whole
> record, we are definitely and firmly convinced the
> only reasonable inference to be drawn is that the
> employment decision was motivated by intentional,
> improper discrimination.  The lower court's
> determination that no discrimination occurred is
> therefore clearly erroneous.

<u>Mohammed</u>, 698 F.2d at 399-401 (some citations omitted) (emphases

35

in original).

First, Mohammed is a Tenth Circuit Court of Appeals case which has never been cited by either the Ninth Circuit Court of Appeals or any district court within the Ninth Circuit. Mohammad is therefore neither binding on nor necessarily persuasive to this Court. Further, even if this Court considered Mohammad, the present case is clearly distinguishable. In Mohammad, the person selected for the position did not meet the minimum qualifications set forth in the position announcement. The Tenth Circuit Court of Appeals therefore held that there was no evidence to support the district court's finding that both the plaintiff and the selectee were amply qualified.

In the present case, Plaintiff argues that she was "clearly more qualified" than Mr. Ikeda, [Walker Decl. at ¶ 31,] because she: had sixteen years of experience with USPS, while Mr. Ikeda had ten; had been the postmaster of a level fifteen post office for almost eight years, while Mr. Ikeda had been the postmaster of a level thirteen post office for less than three; and had more special assignments within USPS than Mr. Ikeda. [Id. at ¶ 49 (citing Exh. J to Plaintiff's Concise Statement (EEO Investigative Report) at 13).] The table of comparative qualifications that Plaintiff cites also shows that Plaintiff had 60 college-level credits, while Mr. Ikeda had 138. [Exh. J to Plaintiff's Concise Statement at 13.] Mr. Takeuchi also

testified that he considered the fact that Mr. Ikeda had current experience as a postmaster while Plaintiff had not been a postmaster for over two years when she applied for the Honaunau Position.  In addition, the Vacancy Announcement for the Honaunau Position stated that a postmaster is required to "identify with and be appropriately involved in the community they serve." [Exh. A to Takeuchi Decl.]  Mr. Takeuchi noted that Mr. Ikeda was already involved in the West Hawaii community on both a professional and personal level, while Plaintiff did not have any involvement in that community.  [Takeuchi Decl. at ¶ 9.]

An employer "has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." Burdine, 450 U.S. at 259.  This Court finds that Mr. Ikeda and Plaintiff were equally qualified candidates. Although Plaintiff had better qualifications in certain areas, Mr. Ikeda had better qualifications in other areas.

Plaintiff also cites Mr. Rapoza's testimony that he believed that she was the best qualified candidate for the Honaunau Position because her "experience far exceeds [Mr. Ikeda's] as an administrator." [Rapoza Depo. at 22:18-19, 23:4-5.]  This Court accords little weight to Mr. Rapoza's testimony.  Mr. Rapoza was not involved in the selection for the Honaunau Position.  [Id. at 24:15-18.]  Further, he is not a disinterested witness because he represented Plaintiff in her

37

administrative complaints for both the Honaunau Position and the Hawi Position.  [<u>Id.</u> at 17:7-10, 24:24-25:4.]  Mr. Rapoza's testimony does not alter this Court's finding that Mr. Ikeda and Plaintiff were equally qualified candidates.  The instant case is therefore distinguishable from <u>Mohammed</u>.

Plaintiff also alleges that Mr. Takeuchi made statements to her, Ms. Poai, and Ms. Enriques in connection with their interviews which indicated that he did not seriously consider female applicants.  [Walker Decl. at ¶ 29.]  It is unclear what statements Plaintiff is referring to.  Plaintiff did not present depositions, declarations, or other statements from Ms. Poai and Ms. Enriques to establish what Mr. Takeuchi said to them during their interviews.  The Court therefore declines to consider Plaintiff's allegations as to those interviews. Plaintiff states that Mr. Takeuchi asked her whether she would be interested in other positions and temporary assignments within USPS and he discussed her limited duty status.  [<u>Id.</u> at ¶¶ 32-36.]  Plaintiff believed that he was suggesting that USPS would not be able to accommodate her disability and that he had already made up his mind about who he was going to select.  [<u>Id.</u> at ¶¶ 37-38.]  Plaintiff asked Mr. Takeuchi what he thought her chances of promotion were, he responded that she was "very well qualified" and that her "only competition for the position is a postmaster."  [<u>Id.</u> at 38.]

38

First, insofar as Plaintiff alleges that Mr. Takeuchi predetermined not to select her because of her disability, the Court will address this argument in relation to her Rehabilitation Act claim.  Even assuming that he did consider her disability in making his decision, it does not establish that the stated reasons for her non-selection were a pretext for race or gender discrimination.  As to the fact that Mr. Takeuchi asked Plaintiff whether she would be interested in other advancement opportunities within USPS, there is no indication that Mr. Takeuchi only discussed this issue with the female applicants or only the Caucasian applicants.  Mr. Takeuchi testified that, when he conducted the interviews for the Honaunau Position, his practice was to close the interview and then discuss the applicant's future possibilities with USPS.  [Takeuchi Depo. at 28:14-25.]  Thus, there is no indication that the discussion of Plaintiff's other opportunities within USPS was motivated by her race or gender.

Plaintiff also notes that Mr. Takeuchi stated that she was highly qualified and her only competition was a postmaster, *i.e.* Mr. Ikeda.  This indicates that he did seriously consider Plaintiff.  To the extent that Plaintiff claims that this statement indicates that Mr. Takeuchi failed to seriously consider the other female applicants, the statement does not support Plaintiff's discrimination claim.  Plaintiff and

39

Mr. Ikeda were the only applicants with experience as a postmaster.  If Mr. Takeuchi considered their applications more seriously than the applications of the other three applicants, it was because he believed them to be less qualified, not because they were women.

Plaintiff also argues that Mr. Rapoza's testimony warrants an inference of pretext.  Mr. Rapoza testified that he discussed the Honaunau Position with Mr. Takeuchi before the selection.  He spoke to Mr. Takeuchi as a representative for postmasters.  According to Mr. Rapoza, Mr. Takeuchi asked if he agreed that a postmaster had to get the position.  Mr. Rapoza disagreed and said that it should be person who was the best qualified.  Mr. Rapoza interpreted Mr. Takeuchi's statements to be an indication of his beliefs.  Mr. Ikeda was the only applicant who was a postmaster at the time.  [Rapoza Depo. at 12:20-15:7.]  This Court finds that Mr. Takeuchi's statement does not indicate that he pre-selected Mr. Ikeda based on his gender or race.  Mr. Takeuchi's statement arguably indicates only that he believed that the applicant or applicants with postmaster experience were the best qualified.  Mr. Takeuchi has stated that he did not pre-select Mr. Ikeda.  [Takeuchi Decl. at ¶ 9.]

Finally, Plaintiff alleges that the irregularities in Mr. Ikeda's selection warrant an inference of pretext. Mr. Rapoza testified that, when he spoke with Mr. Takeuchi on

either a Wednesday or a Thursday, Mr. Takeuchi said he had made the selection for the Honaunau Position and had put the packet on the desk of the district manager, Ed Broglio.  Mr. Broglio was out of the office until the following Monday.  On Friday, however, a notice came out that Mr. Ikeda had been selected and that he was assuming the position the next day.  Mr. Rapoza testified that he had never seen such a situation before in the district.  Typically, the district manager approves the selection and the selectee's start date coincides with a pay period. [Rapoza Depo. at 15:16-16:22.]  Plaintiff asserts that this indicates that the selection was made without consulting the district manager.  [Walker Decl. at ¶ 95.]  Even assuming that the procedures followed in Mr. Ikeda's selection were unusual, the irregularities do necessarily indicate pretext.  Although Mohammed included procedural irregularities as one of the circumstances supporting an inference of pretext, there were many other factors in Mohammed that are not present here, including: cancellation of a prior job announcement after the plaintiff applied; statistical evidence showing a lack of minority supervisors; and the fact that the employer had not implemented the affirmative action plan that it adopted.  See 698 F.2d at 401.  In addition, the procedural irregularities in Mohammed were far more serious than in the instant case.  In Mohammed, although the job announcement stated that an ad hoc committee would rank

41

the applicants according to their qualifications, the selecting official chose the non-minority applicant based solely on a review of the applicants' personnel files.  He did neither convened an ad hoc committee nor interviewed the applicants.  In addition, the advertised position was downgraded, apparently because the non-minority selectee, who had been assigned to the position on a temporary basis, would not have been eligible for the position at the historical grade level.  See id. at 397.  The arguable procedural irregularities in the selection for the Honaunau Position do not rise to this level, and this Court finds that they are not sufficient in and of themselves to warrant an inference of pretext.

This Court therefore FINDS that Plaintiff has failed to prove that a reasonable jury could find by a preponderance of the evidence that Defendant's proffered reasons for her non-selection for the Honaunau Position were merely pretext for race or gender discrimination.  The Court GRANTS Defendant's Motion as to Plaintiff's race and gender discrimination claims based on her non-selection for the Honaunau Position.

### 2.   **Hawi Position**

In the argument portion of her memorandum in opposition to the Motion, the only evidence of pretext that Plaintiff cites with regard to the Hawi Position is that she was more qualified than Ms. Rabang.  [Mem. in Opp. at 16.]  In her statement of the

42

case, however, Plaintiff also argues that Mr. Ono's "use of racial slang in reference to Caucasians" shows that race was an impermissible part of his decision not to select Plaintiff for the Hawi Position. [Id. at 8.]

Plaintiff argues that she "clearly . . . ha[s] more experience and qualifications than Ms. Rabang." [Walker Decl. at ¶ 68 (citations omitted).] Although Ms. Rabang had more years of service with USPS, Plaintiff had more responsibility. Ms. Rabang's position prior to her selection for the Hawi Position was a PS5 clerk, a position that primarily provides sales support and customer service. Ms. Rabang occasionally worked as an acting supervisor in the post office that she was employed at. In contrast, Plaintiff had been a postmaster and had more special assignments. [Id. at ¶¶ 57-65.]

As noted supra, an employer can choose between equally qualified candidates as long as the employer's decision is not based on unlawful criteria. See Burdine, 450 U.S. at 259. Whether Ms. Rabang and Plaintiff were equally qualified is a close question. Plaintiff's prior postmaster experience would appear to make her more qualified that Ms. Rabang. Ms. Rabang had twenty years of service at the time of her application, compared to Plaintiff's sixteen, but Plaintiff clearly had more supervisory experience. [Walker Decl. at ¶ 58 (citing Exh. R to Plaintiff's Concise Statement (EEO Investigative Report) at 9).]

Ms. Rabang, however, was already involved in the West Hawaii community, while Plaintiff did not have any involvement in that community.

Mr. Ono testified that he believed Ms. Rabang was the more qualified applicant based on her application and the interview process, which is usually accorded more weight. [Ono Depo. at 36:3-17.] He noted Plaintiff's lifting limitation and testified that, during the interview, he felt like Plaintiff may have been trying to conceal her restriction. He therefore felt that some of her responses were dishonest. [Id. at 37:5-38:23.] Mr. Ono has also stated that he believed Plaintiff could not safely perform the physical requirements of the Hawi Position without full-time assistance to lift items beyond her lifting restrictions. [Ono Decl. at ¶ 5.] Mr. Ono's interview questions for the Hawi Position included a question about whether the applicant could safely lift and carry up to seventy pounds. [Exh. B to Ono Decl.] Mr. Ono testified that the ability to lift and carry up to seventy pounds is a requirement for postmasters in smaller offices and that this is a standard question that he asks during interviews for those positions. [Ono Depo. at 30:19-32:6.] There is no indication in the record that Ms. Rabang has any lifting and carrying restrictions.

Thus, it appears that Mr. Ono determined that Ms. Rabang was the most qualified based, at least in part, on her

ability to safely perform the lifting requirements.   Whether his consideration of Plaintiff's disability was discriminatory will be discussed within her Rehabilitation Act claim.   This Court, however, finds that Plaintiff's and Ms. Rabang's relative qualifications do not support a finding that the stated reasons for Plaintiff's non-selection were a pretext for race discrimination.

Plaintiff also argues that Mr. Ono's use of racial slang regarding Caucasians indicated that he discriminated against her based on race.   Plaintiff, however, testified that Mr. Ono did not make any racially derogatory comments or use any racial slurs during her interview for the Hawi Position.   [Exh. F to Yee Decl. (selected pages of 12/4/07 Depo. of Margo Walker) at 32:1-5.]   Plaintiff points to Robert Rapoza's testimony that he has heard Mr. Ono say "haole"[18] in the context of Mr. Ono's position as a postmaster.   [Rapoza Depo. at 44:15-20.] Mr. Rapoza has known Mr. Ono for approximately twenty years. [Id. at 44:4-6.]   When asked whether he considered the term "haole" derogatory, Mr. Rapoza answered: "No.   I'm saying if you consider 'haole' as derogatory, I've heard that."   [Id. at 44:21-23.]   Mr. Rapoza testified that he did not consider the term

---

[18] "'Haole' means 'foreign' or 'foreigner' in Hawaiian.   The term is used in modern day vernacular to refer-either descriptively or derisively-to Caucasians." Kaulia v. County of Maui, Dep't of Pub. Works & Waste Mgmt., 504 F. Supp. 2d 969, 975 n.9 (D. Haw. 2007).

"haole" derogatory and he could not think of any term that Mr. Ono used which he believed was racially derogatory.  Further, Mr. Rapoza never heard Mr. Ono refer to Plaintiff in a racially derogatory manner.  [Id. at 45:3-11.]

The use of racial slurs can be considered in determining whether an employer's stated reason for an adverse employment action was merely pretext.  See Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1248 (6th Cir. 1995) (quoting Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc., 690 F.2d 88, 97 (6th Cir. 1982) (per curiam)).  In particular, the use of the term haole can show pretext.  See Kaulia, 504 F. Supp. 2d at 989 n.27.  This Court, however, finds that Mr. Ono's use of the term haole is insufficient to create a genuine issue of fact regarding pretext.  First, Mr. Rapoza acknowledged knowing Mr. Ono for twenty years and there is no indication as to when and how often Mr. Ono used the term haole.  Further, there is no indication that Mr. Ono used the term in a discriminatory manner.  Cf. Hoffman v. Winco Holdings, Inc., Civil No. 07-602-HA, 2008 WL 5255902, at *3 (D. Or. Dec. 16, 2008) (use of the terms "whitey" and "haole" constituted "simple teasing" and "offhand comments").  Moreover, Mr. Ono did not use the term in Plaintiff's presence or in reference to her.  Cf. Tuttle v. Metro. Gov't of Nashville, 474 F.3d 307, 320 (6th Cir. 2007) (discriminatory age-related statements made to or about the plaintiff could be circumstantial

evidence of pretext); <u>Busby v. City of Orlando</u>, 931 F.2d 764, 781-82 (11th Cir. 1991) (evidence of pretext included, *inter alia*, testimony that different officers used the word "nigger" and told racially derogatory jokes in the plaintiff's presence on several occasions, that one of those officers told the plaintiff he was a member of the "KKK", and that stickers with the word "nigger" were placed on the plaintiff's locker).

In <u>Kaulia</u>, the plaintiff, who was of Hawaiian ancestry, brought claims of employment discrimination, retaliation, and hostile work environment.  <u>See</u> 504 F. Supp. 2d at 972.  Kaulia's supervisor, John Jake Kostrick, allegedly called Kaulia a "dumb Hawaiian".  <u>See</u> <u>id.</u> at 973-74.  Kostrick also brought a golf cart for the workers to use and put a sign or sticker on it which read "Haole Staff Car."  <u>Id.</u> at 975.  The district judge noted that "such incidents would be enough to show pretext on the part of Kostrick[.]"  <u>Id.</u> at 989 n.27.  The district judge, however, ruled in favor of the employer because the incidents were insufficient to show pretext on the employer's part.  <u>See</u> <u>id.</u> The instant case is distinguishable from <u>Kaulia</u> because Mr. Ono did not make any derogatory comments to or about Plaintiff. Further, <u>Kaulia</u> does not establish that the use of the term haole necessarily indicates racial animus against Caucasians.

In <u>Talley</u>, an employment discrimination action brought by a black former employee, the Sixth Circuit Court of Appeals

reversed an award of summary judgment in favor of the defendant and, *inter alia*, directed the district court on remand to consider racial slurs used by Jodi DiRaimo and Rick Pitino[19] on the issue of pretext. See 61 F.3d at 1248. The racial slurs at issue were not directed at Talley, and most were apparently made outside of his presence.

> A restaurant valet stated that he had heard Mr. DiRaimo make disparaging remarks about blacks, including use of the terms "nigger" or "stupid nigger." The lunch manager also stated that she had heard Mr. DiRaimo use the word "nigger" on occasion. Plaintiff stated that he once heard Mr. DiRaimo, when instructing a utility worker not to take out the trash, state, "You don't need to be doing that. Let the niggers do it." Plaintiff also stated that he had heard Mr. Pitino make racist comments. Plaintiff referred to one comment Mr. Pitino had made in the presence of Mr. DiRaimo in reference to the Clarence Thomas hearings-something to the effect that "It is about time those niggers got what they deserved." Plaintiff also claimed that most of the blacks at the restaurant occupied more menial positions and that he was passed over for the executive chef's position, which was filled with a less-experienced white person.

Id. at 1244 (citations omitted). While Talley supports the proposition that a court can consider racial remarks that were neither about the plaintiff nor in the plaintiff's presence, the instant case is distinguishable from Talley. The racial slurs in

---

[19] The defendant was a Kentucky limited partnership that operated the restaurant where Talley worked. R.P. Restaurants, Inc. was the general partner and it was owned by Mr. DiRaimo, Mr. Pitino, and one other individual. Mr. DiRaimo was also the general manager of the restaurant. See Talley, 61 F.3d at 1243.

Talley were far more pervasive and were clearly derogatory.   In the present case, there is no evidence of when or how often Mr. Ono used the term haole, nor is there evidence that he used it in a derogatory manner.

This Court finds that Mr. Rapoza's testimony that Mr. Ono used the term haole is insufficient to create a genuine issue of fact on the issue of pretext.   This Court therefore FINDS that Plaintiff has failed to prove that a reasonable jury could find by a preponderance of the evidence that Defendant's proffered reasons for her non-selection for the Hawi Position were merely pretext for race discrimination.   The Court GRANTS Defendant's Motion as to Plaintiff's race discrimination claim based on her non-selection for the Hawi Position.

## II.   **Rehabilitation Act Claims**

Courts apply the same standards to discrimination claims under the Rehabilitation Act as they do to discrimination claims under the Americans with Disabilities Act ("ADA").   See Walton v. United States Marshals Serv., 492 F.3d 998, 1003 n.1 (9th Cir. 2007).   "To state a prima facie case under the Rehabilitation Act, a plaintiff must demonstrate that (1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability."   Id. at 1005 (citation omitted).   The ADA defines "disability" as:

49

> (A) a physical or mental impairment that
> substantially limits one or more major life
> activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment
> (as described in paragraph (3)).

42 U.S.C. § 12102(1).

"[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12102(2)(A). An individual is "substantially" limited in a major life activity if her limitation "is a severe restriction . . . compared to how unimpaired individuals normally" engage in that activity. See Walton, 492 F.3d 998, 1007 (major activity of hearing) (citations omitted).

A plaintiff generally bears the initial burden to prove that a reasonable accommodation exists and that the accommodation would enable her to perform the essential functions of the position. See Wong v. Regents of Univ. of Cal., 192 F.3d 807, 816 (9th Cir. 1999) (accommodation to meet essential eligibility requirements for admission). The burden then shifts to the defendant to prove that the accommodation is not reasonable or that the plaintiff was not qualified even with the accommodation. Id. at 817.

In the present case, Defendant does not contest that

Plaintiff is disabled.  See, e.g., Mem. in Supp. of Motion at 2 ("Plaintiff suffered a re-injury to her back, which caused her to be permanently disabled from certain job functions.  After her return to work, USPS provided Plaintiff reasonable accommodation for her permanent physical restrictions caused by her disability.").

### A.   Honaunau Position

Defendant does not contest that Plaintiff was qualified for the Honaunau Position.  Mr. Takeuchi testified that all of the candidates, except Ms. Miyose, were qualified for the position.  [Takeuchi Depo. at 32:20-25.]  According to Plaintiff, Mr. Takeuchi told her that she and another postmaster were the top candidates.  [Walker Decl. at ¶ 38.]

Mr. Takeuchi testified that he was aware of Plaintiff's limited duty status when he interviewed her for the Honaunau Position because he learned of her status in connection with her prior application for another postmaster position.  [Id. at 26:2-11.]  According to Plaintiff, Mr. Takeuchi suggested that she take a temporary OIC position so that she could prove that she was physically capable in light of her limited duty status.  [Walker Decl. at ¶¶ 34-35.]  She asked if he was suggesting that USPS would not be able to accommodate her disability, but he did not give a clear response.  [Id. at ¶ 37.]  Plaintiff argues that Mr. Takeuchi's comments, together with the fact that her

51

qualifications were superior to Mr. Ikeda's, indicate that he used her disability against her in the selection process. [Id. at ¶ 40.] Mr. Ikeda, who was selected for the Honaunau Position is not a person with a disability.

During his deposition, Mr. Takeuchi denied telling Plaintiff that an OIC assignment would be a chance for her to prove herself as a limited duty employee. He also denied making any reference to Plaintiff's limited duty status during her interview. Mr. Takeuchi stated that her limited duty status was not an issue. [Takeuchi Depo. at 30:8-20.]

Viewing the evidence in the light most favorable to Plaintiff, this Court finds that Plaintiff can establish a prima facie case of disability discrimination as to her non-selection for the Honaunau Position. The Court further finds that there are genuine issues of material fact that must be decided by the trier of fact. Defendant's Motion is therefore DENIED as to Plaintiff's disability discrimination claim based on her non-selection for the Honaunau Position.

### B. **Hawi Position**

Mr. Ono testified that he became aware of Plaintiff's limited duty status during her interview for the Hawi Position. [Ono Depo. at 33:16-18.] Mr. Ono did not believe that Plaintiff was qualified for the Hawi Position because she could not lift up to seventy pounds safely. He stated that this is a physical

requirement for the Hawi Position because the Hawi Post Office is only staffed by the postmaster.  He opined that Plaintiff could only do the job if she had full-time assistance to lift items beyond her lifting restriction.  [Ono Decl. at ¶ 5.]  Other than her lifting limitations, there is no indication in the record that Plaintiff lacked the qualifications necessary for the Hawi Position.  See, e.g., Exh. P to Plaintiff's Concise Statement (Glen Ono's EEO Investigative Affidavit) at 1 (stating that Plaintiff "was qualified in each basic requirement").  The record shows that Plaintiff was otherwise qualified for the position and that she was not chosen for the position because of her disability.  Ms. Rabang, who does not have disability, was chosen for the position.  This Court therefore finds that Plaintiff has established a prima facie case of disability discrimination based on her non-selection for the Hawi Position.

Plaintiff has the burden of proving there is a reasonable accommodation for her disability that would enable her to perform the essential functions of the Hawi Position.  See Wong, 192 F.3d at 816.  First, the Court notes that there is no documentation in the record establishing that the ability to lift and carry up to seventy pounds is required to perform an essential function of the Hawi Position.  This requirement is not reflected in the Vacancy Announcement for Hawi Position.  [Exh. A to Ono Decl.]  Mr. Ono testified that he was unsure if it was a

written requirement for smaller post offices where the postmaster
serves as the window clerk and mail handler.  He testified that
the ability to lift seventy pounds is a written requirement for a
clerk or mail carrier.  [Ono Depo. at 30:19-31:8.]  The Court
notes that Plaintiff presented evidence that, as the postmaster
of the Hawi Post Office, Ms. Rabang has customers who bring in
mail in excess of twenty-five pounds four to five times a week.
[Exh. V to Plaintiff's Concise Statement (12/5/07 Depo. of Moira
Rabang) at 30:3-8.]  Plaintiff also notes that a flash report for
the Hawi Post Office during the relevant time period indicates
that the Hawi postmaster regularly had additional help of either
overtime or postmaster relief working as a clerk.  [Walker Decl.
at ¶ 84 (citing Exh. S to Plaintiff's Concise Statement).]

        Even assuming that the ability to lift seventy pounds
was a requirement to perform an essential function, Plaintiff
produced evidence that there are reasonable accommodations.  She
told Mr. Ono during her interview that she could use USPS
equipment to help her with packages beyond her lifting
restrictions and she could ask the customer who brought the
package in to assist her.  [Walker Decl. at ¶ 55.]  In her
opposition to the instant Motion, Plaintiff provided photographs
of equipment that she could use to handle parcels outside of her
lifting restrictions.  The photographs that she provided are of
USPS equipment which she has used to accommodate her physical

54

restrictions.  [Id. at ¶¶ 88-89; Exh. T to Plaintiff's Concise
Statement.]  Plaintiff stated that, if a customer came in with so
many large parcels that there was no room in the office for her
to use a hand truck, she would ask the customer to take the
parcels to the Kapaau Post Office, which is one mile away and has
a larger facility and more staff.  [Walker Decl. at ¶ 90.]
Plaintiff also stated that she would be able to perform the
functions of the Hawi Position even with her other physical
restrictions, including the limitation that she only work eight
hours a day.  [Id. at ¶¶ 91-93.]

     Defendant responds that Plaintiff did not ask for
reasonable accommodation for her disability and did not disclose
her disability until Mr. Ono asked whether she could safely lift
up to seventy pounds.  [Reply at 9.]  Regardless of how Mr. Ono
learned of her restrictions, he did learn of them during the
selection process.  Mr. Ono testified that he did not ask her if
she needed reasonable accommodation because he did not consider
her "handicapped".  [Ono Depo. at 39:19-24.]  He further denied
that there was equipment used to assist employees in processing
mail up to seventy pounds.  [Id. at 40:11-19.]  Defendant argues
that "Plaintiff's request for reasonable accommodation would have
been deemed unfeasible for Hawi because it was and is a one
person post office."  [Reply at 10.]  Defendant, however, does
not identify any evidence supporting his claim that Plaintiff's

suggestions, such as the use of equipment, were unfeasible. Viewing the evidence in the light most favorable to Plaintiff, this Court finds that there are genuine issues of material fact regarding whether reasonable accommodation for Plaintiff's disability would have been feasible for the Hawi Post Office.

        The Court also notes that USPS apparently did not follow its own procedures regarding the promotion of light duty or limited duty employees.  Mr. Ono testified that employees on light or limited duty are not automatically disqualified from promotion by reason of their limitations.  [Ono Depo. at 20:16-21:1.]  Mr. Ono also testified that an applicant's disabilities normally are not discussed in the initial hiring process if they are qualified.  If selected, the applicant must undergo an in-depth examination by a physician before assuming the job.  [Id. at 21:25-22:7.]  Further, the Vacancy Announcement for the Hawi Position states:

> THE UNITED STATES POSTAL SERVICE PROVIDES
> REASONABLE ACCOMMODATION TO QUALIFIED INDIVIDUALS
> WITH DISABILITIES.  IF YOU NEED A REASONABLE
> ACCOMMODATION FOR ANY PART OF THE APPLICATION,
> BIDDING, INTERVIEW, AND/OR SELECTION PROCESS,
> PLEASE CONTACT THE OFFICE IDENTIFIED ON THE
> VACANCY ANNOUNCEMENT.  THE DECISION ON GRANTING
> REASONABLE ACCOMMODATION WILL BE ON A CASE-BY-CASE
> BASIS.

[Exh. A to Ono Decl. (emphasis in original).]  Although Mr. Ono learned of Plaintiff's lifting and carrying restrictions during her interview, he apparently determined that she was less

56

qualified for the position because of her disability, without offering reasonable accommodation to her.

Defendant's Motion is therefore DENIED as to Plaintiff's disability discrimination claim based on her non-selection for the Hawi Position.

### CONCLUSION

On the basis of the foregoing, Defendant's Motion for Summary Judgment, filed October 28, 2008, is HEREBY GRANTED IN PART AND DENIED IN PART.  The Motion is: GRANTED as to Plaintiff's race and gender discrimination claims based on her non-selection for the Honaunau Position; GRANTED as to Plaintiff's race discrimination claim based on her non-selection for the Hawi Position; and DENIED as to Plaintiff's disability discrimination claims based on her non-selection for the Honaunau Position and the Hawi Position.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 17, 2009.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**MARGO E. WALKER V. JOHN E. POTTER, ETC.; CV. NO. 06-00408 LEK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

57